## COMMONWEALTH vs. EDWARD G. WRIGHT.

Hampden. November 4, 1991. - January 15, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal,* Capital case, Assistance of counsel, Conduct of prosecutor, New trial, Voir dire. *Constitutional Law,* Assistance of counsel. *Evidence,* Relevancy and materiality, Prior misconduct.

Discussion of the relationship between this court's standard for review of a capital case under G. L. c. 278, § 33E, and the standard for determining whether a defendant has been denied the constitutional right to effective assistance of counsel. [681-682]

The Commonwealth's motion to amend the date alleged in a murder indictment was properly allowed. [682-683]

At a murder trial, the judge properly admitted expert testimony concerning the presence of blood on the victim's kitchen floor and in the motor vehicle that the defendant operated on the night of the murder, as well as testimony that a sneaker like the defendant's could have made the bloody imprint on the kitchen floor. [683]

The judge's denial of a motion for a new trial in a criminal case was supported by the record. [683]

At a criminal trial, the evidence raised no question as to the voluntariness of any statement by the defendant to police. [683-684]

There was no merit to a criminal defendant's claims of prosecutorial misconduct. [684]

At a criminal trial, evidence concerning the defendant's relationship with the mother of a prosecution witness was properly admitted on the issue of the witness's bias, even though it tended to show prior bad acts of the defendant. [684-685]

Numerous matters raised on a criminal defendant's motion for a new trial provided no substantial support to his claim that the performance of his trial attorney had fallen below the constitutional standard for effective assistance of counsel [686-688]; nor, in the circumstances, was his case harmed by trial counsel's failure to bring out a point of difference between a police witness's grand jury testimony and his trial testimony [688].

No substantial risk of a miscarriage of justice resulted from the defendant's absence from a brief voir dire hearing as to the effect on the jury of a certain newspaper article. [689]

A prosecutor's misstatements concerning relatively insignificant matters during a murder trial did not warrant relief on appeal. [689-690]

INDICTMENT found and returned in the Superior Court Department on June 7, 1984.

The case was tried before *William W. Simons,* J., and motions for a new trial were heard by him.

*Robert H. Astor & Esther J. Horwich* for the defendant.

*Elizabeth Dunphy Farris,* Assistant District Attorney, for the Commonwealth.

The defendant, pro se, submitted a brief.

WILKINS, J. The defendant appeals from his conviction of murder in the first degree and from the denial of two motions for a new trial. We affirm the conviction and the orders denying the defendant's motions for a new trial.

In the afternoon of May 14, 1984, officers of the Springfield police department found the victim's body with more than sixty stab wounds in her second-floor apartment at 306 Dwight Street Extension. There was evidence that she had died between 12:15 A.M. and 6:15 A.M. that day. A neighbor heard a woman screaming for about fifteen minutes shortly before 4 A.M. He then heard a motor vehicle start up and leave the area.

There was evidence from which the jury could have found the following. About 12:45 A.M. on May 14, the defendant and the victim left a motor vehicle that the defendant had borrowed from a friend and entered the victim's apartment. At daybreak, the defendant returned to his friend's apartment. The friend thereupon drove the defendant to Delaware, leaving about 8 A.M. Shortly after the victim's body was discovered, the defendant called one Arthur Turner. Turner lived with his mother, who previously had been the woman friend of the defendant. The defendant told Turner that he had killed someone and gave the victim's address. He described the victim as a "white bitch" and said he had stabbed her with a knife that had a fourteen-inch blade because she had fired a gun at him. On the next day, Turner

read about the victim's murder, and on May 16, he gave a statement to the police.

Evidence of blood in the victim's apartment and in the borrowed motor vehicle tended to prove the defendant's guilt. A bloody imprint made by a shoe on the tiled kitchen floor of the victim's apartment could have been made by a sneaker that the defendant was wearing when he was interviewed by Springfield police after Wilmington, Delaware, police had arrested him on May 16 at his sister's home. There were traces of occult blood, possibly of fairly recent origin, on the steering wheel, headlight switch, inside door handle, and other parts of the motor vehicle that the defendant had borrowed on the night of the murder.

The defendant testified that he had met the victim at a nightclub and had later driven her to her apartment, with several intermittent stops. They talked for about an hour, and, when he left about 1:30 A.M., she let him out of her apartment. The defendant denied calling Arthur Turner from Delaware on May 14.

We have three briefs on behalf of the defendant. One, which was filed by counsel appointed after the defendant's conviction, addresses the defendant's direct appeal and, in doing so, argues some issues as to which the defendant's appellate rights were not preserved in the traditional manner. This first brief also challenges the denial of the defendant's first motion for a new trial. That motion claimed a new trial because of newly discovered evidence, because the verdict was against the weight of the evidence, and because of police misconduct. The trial judge, who heard evidence on the motion, concluded that the alleged newly discovered evidence was not credible or was inconsequential and of dubious probative value. He also concluded that he need not discuss the other reasons advanced in support of the motion. We shall start with a consideration of the arguments presented in this first brief and, in doing so, shall dispose of some arguments advanced in the other two briefs.

We shall then consider arguments that appear in the brief which challenges the denial of the defendant's second motion for a new trial. That motion claimed that the defendant's trial counsel was ineffective in a constitutional sense and that the defendant's rights were denied because of his absence from a voir dire hearing concerning what the defendant calls juror misconduct. The trial judge concluded that the claimed deficiencies of counsel were "snippets of detail out of a long and difficult case complicated to some extent by an antagonistic attitude on the part of defendant." He characterized defense counsel as well prepared, forceful, competent, and attentive to his client. On the question of the defendant's absence from the voir dire hearing, the judge ruled that counsel had assented to the defendant's absence.

Finally, we shall consider those remaining issues, argued in the defendant's pro se brief, that we have not resolved in our prior discussion.

In considering issues argued on direct appeal as to which the defendant's appellate rights were not preserved by an objection or in some other manner, we apply the standard of G. L. c. 278, § 33E (1990 ed.). We must decide whether there is a substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980). We have suggested that a defendant in a so-called "capital case" under § 33E has a lower barrier to clear with respect to an error at trial not objected to than does a similarly situated defendant in an appeal of a noncapital case. See *Commonwealth* v. *Lennon*, 399 Mass. 443, 448-449 n.6 (1987).

We have not previously discussed the relationship between the standard of review we apply under § 33E and the standard for determining the denial of a defendant's constitutional right to effective counsel. We have said that a defendant is entitled to appellate relief if trial counsel failed to meet a minimum standard of performance (*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974]), and if the defendant

has also shown that, but for counsel's error, something material might have been accomplished in the defendant's favor (*Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 [1977]). See *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984), describing the standard for testing the ineffectiveness of counsel under the Constitution of the United States (which we have said is a standard no more favorable to a defendant than that under the State Constitution. *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 [1985]).

We conclude that, if a defendant convicted of murder in the first degree is unable to show on his direct appeal that, as to an unpreserved claim of error, there is a substantial likelihood of a miscarriage of justice, he would not prevail by asserting as to the same issue the ineffectiveness of his counsel. In other words, the statutory standard of § 33E is more favorable to a defendant than is the constitutional standard for determining the ineffectiveness of counsel. In deciding this case, therefore, we need not focus on the adequacy of trial counsel's performance. In reviewing each claim of the ineffectiveness of trial counsel, therefore, we shall consider whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion.[1]

1. We consider here issues argued on the defendant's appeal from his conviction and from the denial of his first motion for a new trial.

---

[1]In reviewing an appeal under G. L. c. 278, § 33E, from a conviction of murder in the first degree, we consider each argument that a new trial or a verdict of not guilty is required because of a claimed error that is said to have created a substantial likelihood of a miscarriage of justice. We also consider generally the fairness of the verdict to see whether the verdict should be reduced or a new trial granted. Once we have performed those functions, our special powers of review under § 33E are no longer applicable. Any claim of ineffectiveness of counsel presented in a subsequent appeal from the denial of a motion for a new trial, authorized by a single justice of this court, would not be tested under the § 33E standard but on the applicable constitutional standards, State and Federal.

The following contentions deserve no more than limited discussion:

(a) The allowance of the Commonwealth's motion to amend the date of the murder alleged in the indictment from May 15, 1984, to May 14, 1984, properly was not objected to, did not prejudice the defense of the case (the substance of which was available from the grand jury minutes and otherwise), and involved a nonessential element of the indictment (G. L. c. 277, § 20 [1990 ed.]).

(b) The testimony of the chemist concerning the presence of traces of blood on the victim's kitchen floor and in the motor vehicle that the defendant operated on the night of the murder was properly admitted. It was relevant to the question of the defendant's guilt. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 744-745 (1990). The fact that the expert could not tell whether the blood was human blood affected the weight of the evidence but not its admissibility. Nor does the fact that no traces of blood were found on the defendant's sneakers make inadmissible the testimony that a sneaker like the defendant's could have made the bloody imprint on the kitchen floor. There is nothing in the record to show that the defendant would have benefited measurably if his counsel had presented an expert to testify concerning the traces of blood.

(c) The judge did not abuse his discretion in denying the defendant's first motion for a new trial. The judge's conclusion that the asserted newly discovered evidence lacked probative value is based on his assessment of the credibility of witnesses and is unassailable on this record. The judge noted the two other bases for the new trial motion and properly concluded that they did not warrant discussion. As to the first, the credibility of witnesses' testimony about any incriminating telephone call that the defendant may have made was for the jury. As to the second, the claim of police misconduct is not supported on the record. To prove police misconduct it is not enough that the defendant challenges as untrue certain evidence that the police had gathered.

(d) The judge's ruling that the defendant had been given Miranda warnings and had elected to talk to the police in Delaware is warranted on the record. The claim that inadequate Miranda warnings were given is frivolous. The evidence raised no question as to whether whatever statements the defendant made to the police in Delaware were made knowingly and voluntarily. Counsel had no reason to raise the voluntariness issue and to ask for a voir dire hearing, and the judge had no obligation to do so on his own. See *Commonwealth* v. *Cartagena*, 386 Mass. 285, 287 (1982). Consequently, the defendant denied making any statements to the Delaware police after receiving Miranda warnings. The contested issue was whether the statements were made at all, not whether they were voluntary.

The defendant argues here, for the first time, that the prosecutor intentionally engaged in misconduct in the course of the trial. There is no merit to the claim that the prosecutor injected improper references to race in this case involving a black defendant and a white victim. The prosecutor was warranted in referring in closing argument to evidence that the defendant had called the victim a "white bitch." The use of words to the same effect in the defendant's statement to the Delaware police and in the telephone call Turner received tended to prove the identity of the caller. The prosecutor committed no significant error in referring to the fact that the defendant had been in jail in Delaware. It is not clear on the record that the jury would have understood that the defendant was held in Delaware on some charge other than the murder charge. The fact that the defendant and the victim purchased alcoholic beverages from an unlicensed source ("a bootlegger," as the prosecutor said) was a trivial point for the prosecutor to argue to the jury and harmless in its effect.

The defendant argues further that the offering of evidence of a restraining order that his woman friend had obtained against him was prosecutorial misconduct. It is not clear why this argument is presented in this form and not directly, as a claim of judicial error in the admission of the evidence.

In order to understand why evidence of the restraining or-
der was admissible, it is important to know that the defend-
ant's woman friend who obtained the restraining order was
the mother of Arthur Turner, the witness who had testified
to the incriminating telephone call that the jury could have
found was made by the defendant to Turner from Delaware.
At the time of that telephone call, the defendant and Tur-
ner's mother had had a falling out. She had obtained a re-
straining order against the defendant. Sometime later, after
Turner had told the police of the substance of the call and
had testified before the grand jury that indicted the defend-
ant, Turner's mother and the defendant became reconciled.
Thereafter, Turner recanted his testimony that the defendant
had called him. Turner continued to agree to the substance
of the conversation. He maintained at trial, however, that he
did not know whether it was the defendant who had called
him.[2]

The judge ruled that Turner's prior identification of the
defendant in sworn grand jury testimony as the one who had
called him was admissible substantively under principles
stated in *Commonwealth* v. *Daye*, 393 Mass. 55, 71-75
(1984). That ruling is not challenged in this appeal. Evidence
of the relationship of the defendant and Turner's mother was
properly admitted to show Turner's biases, even though it
tended to show certain bad acts of the defendant. See *Com-
monwealth* v. *Redmond*, 357 Mass. 333, 338-339 (1970).
The improvement in the relationship between Turner's
mother and the defendant could explain the change in Tur-
ner's testimony. The judge instructed the jury that the evi-
dence was introduced, and could be used only, to show the
relationship of Turner, his mother, and the defendant, and
not as evidence of the defendant's bad character.

---

[2]In the brief whose arguments we are now considering, the defendant
does not challenge the admission of the substance of Turner's telephone
call with someone named "Ed." We return to this issue later in one aspect,
whether there was enough evidence that the defendant made the telephone
call to warrant its substance to be admitted in evidence.

What we have said is sufficient to dispose of the defendant's claims of the ineffectiveness of counsel made in the brief whose arguments we now are considering. Most of the asserted omissions of counsel were not errors in any respect. The few occasions we have not discussed in which the defendant claims his counsel should have done something differently involve matters of little consequence.

2. We come to the arguments presented by the second brief, the one that challenges the denial of the defendant's second motion for a new trial. That motion, with one exception, is based on a claim of the ineffectiveness of trial counsel. We have already disposed of some of those issues and need not discuss them again.[3] We consider the remaining issues to see whether there was any error committed where it is claimed counsel should have acted and, if there was or may have been error, whether it is likely that the error could have affected the jury's verdict.

We have looked at each claim that the prosecutor acted improperly without objection of counsel, and we conclude that his conduct was not improper. Counsel's failure to object then becomes immaterial. Some of these claims relate to issues decided earlier in this opinion, and they need not be discussed again.[4] We reject the assertion that in his closing argument the prosecutor stated his personal beliefs and opinions to the jury. His arguments were explicitly or implicitly focused on the evidence. This contention was not worth making.

---

[3]Issues already disposed of and argued here in terms of counsel's omissions include: the argument that counsel should have challenged the motion to amend the date on the indictment; the objection to the failure to obtain a defense expert concerning blood stains; the claim that counsel should have argued that the Miranda warnings given the defendant in Delaware were deficient; and the assertion that counsel should have requested a voir dire on the voluntariness of the statements the defendant made in Delaware. There is nothing in the record to show that the defendant would have benefited in any way, if trial counsel had raised these issues.

[4]These include the prosecutor's references to the defendant's incarceration in Delaware, to evidence of acts of violence or threats against the defendant's woman friend, and to the victim's race.

The defendant argues that the prosecutor attempted to force him to comment on the credibility of witnesses. The examples the defendant cites from the transcript do not involve any direct request of him to comment on the credibility of witnesses. The prosecutor should not have led the defendant through Turner's statement describing the substance of the telephone call from Delaware by reading from it sentence by sentence. The statement spoke for itself. Nothing harmful, however, came from what the prosecutor did. He could have asked the defendant, point by point, about the truth of each fact asserted in the statement. The rule against asking one witness whether another witness was lying (see *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 [1986]) was not violated here. See *Commonwealth* v. *Richenburg*, 401 Mass. 663, 673-674 (1988).

The defendant contends that his counsel should have moved to suppress the sneakers that the Springfield police took from the defendant in Delaware. That contention fails. First, no basis for such a motion is shown here because the record does not set forth the circumstances in which the police took the defendant's sneakers. For all we know, the defendant surrendered them voluntarily. Secondly, before the sneakers were taken the police had probable cause to arrest the defendant and, therefore, could have taken the sneakers from him, even before he was arrested on the murder charge. See *Commonwealth* v. *Santiago*, 410 Mass. 737, 742 (1991). It seems reasonably clear that any motion to suppress the sneakers would have failed.

No error appears in the jury instructions to which the defendant says his counsel should have objected. The judge's instruction concerning the way the jury should treat circumstantial evidence was error free. See *Commonwealth* v. *Basch*, 386 Mass. 620, 625-626 (1982). The charge on the limited use of evidence of the defendant's threats against Turner's mother was proper. Specific discussion of the limited use that the jury could make of evidence of a restraining

order and other evidence of threats was not required. The consciousness of guilt instruction was proper in light of evidence from which the jury could conclude that the defendant had fled the jurisdiction. See *Commonwealth* v. *Toney*, 385 Mass. 575, 583 (1982).

There is no merit to the claim that evidence of the contents of the telephone call that Turner received on the afternoon of the murder should not have been admitted at all or that, at least, the evidence should have been limited to use for impeachment of the defendant. We reject the argument that there was no evidence that the call came from the defendant and, therefore, that its admission was error. Turner testified at trial that the call came from someone named "Ed." In his grand jury testimony, Turner said that the call had come from the defendant. The substance of that call had a similarity in certain respects to what the defendant told the police in Delaware. There was evidence of a call to Turner's residence made from the Delaware residence of the defendant's sister about the time Turner said the call was made. There was also evidence that the defendant had called Springfield from Delaware to obtain Turner's telephone number.

The defendant makes one claim of the ineffectiveness of his trial counsel that falls into a category different from his other claims discussed above. He complains that his trial counsel failed to bring out an inconsistency between the grand jury testimony and the trial testimony of one of the Springfield police officers who interviewed him in Delaware. The word "inconsistency" overstates the difference. At trial, Captain Stelzer testified that the defendant had said that he would tell the officers what happened if they would show him the statements that they had. Before the grand jury, Captain Stelzer's testimony was in narrative form and was less complete. He did not testify that the defendant said he would tell what happened if he saw the statements the police had. The difference is not without possible significance in measuring Captain Stelzer's credibility, but, because the defendant testified to what happened as he saw it, we see no meaningful

harm to the defendant's case from the failure of counsel to bring out the difference.[5]

In a catch-all summary, the defendant's second brief argues a string of alleged omissions of his trial counsel without citation to the record and without explanatory comment. Some of these claims involve matters that we have already disposed of adversely to the defendant. As to the others, without deciding that trial counsel failed in his obligations in any respect, we conclude that the alleged omissions do not present a substantial likelihood of a miscarriage of justice (or involve situations in which better work by counsel likely would have made a difference).

The one issue argued in this brief that does not rest on a claim of ineffective assistance of counsel concerns the defendant's absence from a brief voir dire hearing that the judge conducted regarding the possibility that a newspaper article may have tainted eleven jurors who had already been seated. The judge found that defense counsel did not object when the question of the defendant's absence was raised. The judge concluded that the newspaper article had not tainted the eleven jurors. In such circumstances, counsel waived whatever right the defendant had to be present. In any event, there was no prejudice or a substantial likelihood of a miscarriage of justice.

3. Finally, we come to issues raised in the brief that the defendant filed on his own behalf. We discuss, of course, only issues not already disposed of in this opinion. There are but a few.

The defendant is correct in pointing out that the prosecutor argued certain facts to the jury that were not in evidence. He referred to testimony from Turner before the grand jury that the judge had excluded as hearsay. The prosecutor also briefly alluded to a witness's characterization of the defend-

---

[5]If the defendant had denied any association at all with the victim on the night of the murder, an admission by him that something had happened could have been incriminating, and the failure to cross-examine on the differences in Captain Stelzer's two statements might then have been significant.

ant's behavior at one time in Delaware, although the judge had struck that testimony. Although mistakes of this character could be serious violations of a defendant's rights, in this case the misstatements concerned insignificant, collateral facts.

The prosecutor was simply wrong in telling the jury that they had the grand jury minutes before them. The important point is that the jury did have before them the substance of what Turner acknowledged before the grand jury to be the telephone conversation that he had had with the defendant. The jury also had before them testimony from Turner that they could have understood to mean that the person who telephoned him said that he was Ed Wright. The prosecutor's overstatement involved a matter of relative insignificance.

We now deal with various assertions not previously discussed. (a) The defendant's claims that the police fabricated evidence and that his counsel failed to interview witnesses seasonably lack support in the record. (b) His criticisms of aspects of his counsel's closing argument to the jury are based on a misunderstanding of his counsel's purpose in arguing as he did. (c) The judge did not err in denying in his discretion the defendant's midtrial motion to discharge his counsel and to obtain another one. *Commonwealth* v. *Tuitt*, 393 Mass. 801, 804-805 (1985). The judge patiently and understandingly explained to the defendant that his stated reasons for discharging his counsel were not sound. There is no basis for concluding that the defendant wished to discharge his counsel and represent himself. (d) We have considered the defendant's other arguments and conclude that they lack merit and need not be discussed individually. Any claim of the ineffectiveness of appellate counsel who filed the first brief here is made immaterial by our consideration of the merits of the relevant issues.

4. We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E, and conclude that the defendant is not entitled to relief. There was obviously a factual question for the jury as to whether the defendant killed

the victim. The jury resolved that issue against him. Under § 33E we do not second-guess the jury on such an issue.

*Judgment affirmed.*

*Orders denying motions for
a new trial affirmed.*