NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11695

COMMONWEALTH  vs.  ALBERTO VAZQUEZ.


Essex.      September 8, 2017. - November 29, 2017.

Present:  Gants, C.J., Lenk, Gaziano, Budd, & Kafker, JJ.


Homicide.  Constitutional Law, Assistance of counsel.  Cellular
    Telephone.  Evidence, Prior misconduct.  Practice,
    Criminal, Capital case, Assistance of counsel, Argument by
    prosecutor, Instructions to jury.  Intent.



    Indictment found and returned in the Superior Court
Department on November 17, 2010.

    The case was tried before Richard E. Welch, III, J.


    Leslie W. O'Brien for the defendant.
    David F. O'Sullivan, Assistant District Attorney, for the
Commonwealth.


    BUDD, J.  In the early morning hours of June 18, 2010,

Julian Melendez was shot and killed during an exchange with an

individual later identified as the defendant, Alberto Vazquez.

The defendant was convicted of murder in the first degree on a

theory of deliberate premeditation.  On appeal, the defendant

claims error on the part of defense counsel, the trial judge, and the prosecutor, requiring a new trial. Alternatively, he seeks a reduction in the verdict pursuant to G. L. c. 278, § 33E. We affirm the defendant's conviction and decline to exercise our extraordinary power under G. L. c. 278, § 33E.

Background. We summarize the facts as the jury could have found them, reserving certain details for discussion of specific issues. Just prior to 2 A.M. on June 18, 2010, in a Lawrence neighborhood, the defendant drove up to a group of people and began arguing with some of them. The victim approached the automobile and attempted to defuse the situation, saying, "It['s] me, JM, it's me, your brother." The defendant drove away, but returned approximately five minutes later and continued to argue with some of those present. The victim, who again approached the automobile and leaned into the driver's side window, tried once more to calm down the defendant. Suddenly, the defendant reached out, shot the victim at close range, and drove away. When first responders arrived, the victim was unresponsive. He died at the hospital within twenty-four hours of the shooting.

At trial, the Commonwealth did not provide evidence of motive; however, the prosecution's theory was that the defendant deliberately premeditated the killing of the victim. It relied chiefly on the testimony of two cooperating witnesses: one

testified to having witnessed the shooting and identified the defendant as the shooter, and the other testified that the defendant confessed to being the shooter. The Commonwealth also presented historical cell site location information (CSLI) records of the cellular telephone that the defendant used, which indicated he was at the scene of the shooting when it occurred. The defense theory focused on reasonable doubt as to the identity of the shooter and attacked the credibility of the Commonwealth's cooperating witnesses.

Discussion. The defendant argues that the Commonwealth's use of CSLI records violated his rights under art. 14 of the Massachusetts Declaration of Rights; that the trial judge erred in admitting prior bad act evidence; and that the prosecutor argued facts not in evidence in her closing argument. The defendant further claims that, in response to a question the jury raised during their deliberations, the judge erred in instructing the jurors that the defendant could be convicted of murder based on the theory of transferred intent. We examine each issue in turn.

1. Ineffective assistance of counsel. The defendant claims that his trial counsel was ineffective for failing to move to suppress the CSLI records because the Commonwealth failed to demonstrate probable cause to procure them. In 2014, we held that a government-induced production of CSLI records is

a search in the constitutional sense, requiring a showing of probable cause and a warrant under art. 14.  Commonwealth v. Augustine, 467 Mass. 230, 255 (2014) (Augustine I), S.C., 470 Mass. 837 and 472 Mass. 448 (2015).  We further held, however, that this new rule applies "only to those cases where the defendant raised the warrant issue before or during the trial and the defendant's conviction was not final at the time that Augustine I was decided."  Commonwealth v. Fulgiam, 477 Mass. 20, 27, cert. denied, 86 U.S.L.W. 3177 (2017).  Because the defendant did not raise the issue prior to this appeal, he is not entitled to the benefit of Augustine I.  See Commonwealth v. Broom, 474 Mass. 486, 492 (2016).  The defendant attempts to avoid this result by arguing that his counsel should have foreseen the holding in Augustine I and moved to suppress the CSLI records due to the lack of probable cause.  We need not reach this issue as we conclude that, even if defense counsel were ineffective on this count, and even if the CSLI records would have been suppressed had the motion been made, there still would not be a substantial likelihood of a miscarriage of justice.

When we review ineffective assistance claims in direct appeals from convictions of murder in the first degree, we look to see "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there

was, whether that error was likely to have influenced the jury's conclusion." Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014).[1] We will not disturb the verdict if we are "substantially confident that, if the error had not been made, the jury verdict would have been the same." Commonwealth v. Ruddock, 428 Mass. 288, 292 n.3 (1988). See Commonwealth v. Montrond, 477 Mass. 127, 134 (2017). Here, even if we were to assume for the sake of discussion that the CSLI records could have been suppressed, we are confident that the records were not likely to have influenced the verdict, that the jury would have reached the same result even without the records, and that, accordingly, there has been no substantial likelihood of a miscarriage of justice.

The CSLI records were not a significant part of the prosecution's case and were both cumulative and corroborative of other evidence. See Commonwealth v. Beneche, 458 Mass. 61, 76

---

[1] Because this is a capital case on direct appeal, the defendant is entitled to a more favorable standard than the constitutional standard for measuring ineffective assistance claims articulated in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), i.e., "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Unlike the constitutional standard, under the standard applicable to capital cases, which is rooted in G. L. c. 278, § 33E, "we need not focus on the adequacy of trial counsel's performance." Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014).

(2010); Commonwealth v. Francis, 432 Mass. 353, 364-365 (2000). The CSLI evidence corroborated the Commonwealth's other, very strong evidence of guilt by confirming, together with eyewitness testimony, that the defendant was in fact in the area of the crime at the time of the shooting and drove out of the city thereafter.

An eyewitness who was present at the shooting positively identified the defendant as the shooter; this eyewitness had known the defendant since elementary school. See Commonwealth v. Thomas, 476 Mass. 451, 461 (2017) (discussing how witness's prior familiarity with defendant is factor in reliability of identification). Contrast Commonwealth v. Burgos, 470 Mass. 133, 143 (2014) (remanding where "[t]here were no eyewitnesses who identified the defendant as a shooter," and only identification evidence was evidence admitted in error).

Another witness also identified the automobile that the shooter drove, visible in a surveillance video recording of the crime scene. The Commonwealth focused the jury's attention on a specific, unique characteristic of the automobile that was visible in the recording. Further, multiple witnesses testified that they had seen the defendant driving the same vehicle, which belonged to his girl friend, on other occasions.

Several witnesses also testified to admissions and other incriminating statements the defendant made in the aftermath of

the murder.  Within hours, the defendant telephoned a friend and admitted that he had done "something terrible, something bad." The defendant sounded "[l]iterally scared" and asked his friend for a loan in the amount of $500.  The friend telephoned him back to "try to get to the bottom of things," but the defendant refused to explain himself, stating only that "he needed to leave for [a ]while."

Thereafter, the defendant dropped a gun off in a bag at another friend's house.  When the friend found the gun inside the bag, the friend telephoned the defendant to ask whether it was the gun the defendant used in the murder, and the defendant admitted that it was.

The same friend also testified that he was concerned about rumors that were circulating, and specifically informed the defendant in person that an individual was telling people "he kill[ed] somebody on Lowell Street."  The defendant did not deny the accusation; he looked worried and shook his head.  The friend advised the defendant to leave Massachusetts, because "it was only a matter of time until he gets caught."

Considering all the evidence and the overwhelming strength of the Commonwealth's case apart from the CSLI records, we are substantially confident that the jury's verdict would not have been any different had the CSLI records not been admitted. "[T]he admission in evidence of those [records] did not so

materially strengthen the Commonwealth's case as to create a substantial likelihood of a miscarriage of justice." Commonwealth v. Gonzalez, 469 Mass. 410, 416 (2014).

2. Prior bad act evidence. At trial, the jury heard testimony about the defendant's past possession of and the circumstances surrounding his display of a black firearm. The defendant argues that the probative value of this "propensity" evidence was substantially outweighed by its prejudicial effect, and that its introduction requires a new trial.

A witness testified that, approximately one month before the shooting, the witness observed the defendant engage in a verbal argument with a third individual and then leave the area. The defendant returned approximately twenty or thirty minutes later and displayed what appeared to be the black handle of a semiautomatic firearm underneath his shirt when asking for the whereabouts of the individual with whom he had argued. The witness also testified that he had seen the defendant with a black firearm on one prior occasion, and that the defendant told the witness that he always carried a firearm.

Although prior bad act evidence is generally inadmissible to show one's propensity to commit a crime, such evidence may be admitted, "if relevant, for some other purpose, such as proving common scheme, pattern of operation, preparation, opportunity, nature of relationship, knowledge, intent, motive, identity, or

absence of accident or mistake." Commonwealth v. Cheremond, 461 Mass. 397, 408 (2012). See Mass. G. Evid. § 404(b)(2) (2017). It also may be offered to show that the defendant has the means to commit the crime. Commonwealth v. Ridge, 455 Mass. 307, 322 (2009), citing Commonwealth v. Anderson, 448 Mass. 548, 560 (2007).

However, even if such evidence is offered for one of these purposes, it is only properly admitted if its probative value outweighs the risk of unfair prejudice to the defendant. Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). The analysis whether such evidence should be admitted is "left to the sound discretion of the judge, whose decision to admit such evidence will be upheld absent clear error." Commonwealth v. Robidoux, 450 Mass. 144, 158-159 (2007), and cases cited. Here, the judge admitted the witness's testimony after finding that it was "highly probative as to [the] defendant's familiarity [with] firearms, of access to firearms and the fact that he would carry a firearm." As the defendant did not object to this testimony, we review any error for a substantial likelihood of a miscarriage of justice.[2] See Commonwealth v. Johnson, 463 Mass.

---

[2] The defendant argues that by filing a motion in limine to exclude this testimony, he preserved his appellate rights and therefore the admission of this testimony should be reviewed for prejudicial error rather than for a substantial likelihood of a miscarriage of justice. In fact, although we recently held that filing a motion in limine opposing a witness's testimony is

95, 110 (2012).

The defendant's statement that he always carried a firearm was properly admitted as an incriminating admission that was relevant to show that he had the means to commit the crime.  See Anderson, 448 Mass. at 560 (testimony regarding knife defendant was known to carry and proficiency with knives tended to prove means and ability to commit crime).  See also Commonwealth v. Ashman, 430 Mass. 736, 744 (2000).

The testimony that the witness had previously observed the defendant in possession of a black firearm is a closer call; however, we conclude that the judge did not abuse his discretion in admitting it.  In general, we "have not . . . viewed the tenuous relevancy of evidence of a person's general acquaintance with weapons as outweighing the likelihood that such evidence will have an impact on the jury unfair to a defendant." Commonwealth v. Toro, 395 Mass. 354, 358 (1985).  Further, "[w]here a weapon definitively could not have been used in the commission of the crime, we have generally cautioned against admission of evidence related to it."  Commonwealth v. Barbosa, 463 Mass. 116, 122 (2012).  However, "[a] weapon that could have been used in the course of a crime is admissible, in the judge's discretion, even without direct proof that the particular weapon

_____

sufficient to preserve appellate rights, see Commonwealth v. Grady, 474 Mass. 715, 724-725 (2016), we also held that this ruling only applied prospectively, id.

was in fact used in the commission of the crime." Id., and cases cited.

The Commonwealth presented evidence from an eyewitness who testified that the firearm used in the shooting was a chrome-colored revolver, not a black semiautomatic firearm. Nevertheless, because there was no definitive (forensic) evidence demonstrating that the firearm used to shoot the victim was not the same one that the defendant was seen with a month earlier, the evidence was admissible at the trial judge's discretion. See Barbosa, 463 Mass. at 123, and cases cited (evidence of defendant's access to weapon allegedly dissimilar to murder weapon admissible where dissimilarity was either asserted without proof or based on eyewitness's memory of weapon's color). There was no error, especially where the judge provided limiting instructions. See Ridge, 455 Mass. at 309, 322-323.

However, the admission of testimony regarding a prior instance of the defendant's threatening display of a black-handled firearm was error. Based on the testimony presented to the jury, the defendant took similar actions both prior to his display of a black-handled firearm and prior to shooting the victim. In each case, the defendant was said to have argued with one or more people, left the area, and then returned. Given the similarity of the defendant's actions in each case,

the jury could have determined that if he behaved in that particular way a month beforehand, he must have been the person who shot and killed the victim.  In this instance, the risk of prejudice was high and outweighed the probative value of the testimony.

Although it was error to admit the evidence regarding the circumstances surrounding the defendant's threatening display of a firearm, we conclude that the error did not create a substantial likelihood of a miscarriage of justice.  The judge gave a limiting instruction immediately following the witness's testimony, explaining that the evidence the witness provided could be considered "solely for the limited issues that the defendant had the means to obtain a firearm and had access to firearms and was familiar with firearms," and directed the jury to disregard portions of the testimony that suggested that the defendant possessed the murder weapon prior to June of 2010. The judge further instructed that the evidence could not be considered "on any issue of bad character or criminal propensity."[3]  As such, the judge's instruction forbade the jury

---

[3] The judge instructed the jury as follows:

"Ladies and gentlemen, I want to give you a special limiting instruction on the testimony of this witness. Remember that the defendant here is not charged with committing any crime other than the crime of murder of Julian Melendez.  That's the only charge here.  That's the only thing that you're concerned with.  You have heard

from using the evidence in ways that were unduly prejudicial to the defendant.  Moreover, the judge again instructed the jury on the matter in his final charge.[4]  We presume that juries follow

---

mention here, if you credit this witness -- and, of course, you determine whether you believe any witness -- so if you do believe [this witness], you've heard evidence that he had seen the defendant on previous occasions prior to June of 2010, carrying a firearm and displaying the handle of what he thought was a firearm in May of 2010 or in that area.  Now, ladies and gentlemen, the Commonwealth does not claim that the firearm the defendant allegedly possessed before June of 2010, was connected with the firearm allegedly used in the murder.  That's not what the Commonwealth is claiming here.  And, ladies and gentlemen, you may use this evidence, that is evidence of prior possession of a firearm by the defendant, if you believe that evidence, you can't use that evidence as a substitute for proof that the defendant committed the crime of murder, nor may you consider it as proof that the defendant had a criminal propensity of a bad character, you don't use it for that.  For example, you may not conclude that because the defendant -- if you believe the testimony -- earlier displayed a gun or carried a firearm.  Even if you believe that, you cannot then conclude that the defendant committed the murder, they're just not logically connected.  But ladies and gentlemen, you may consider this evidence for a limited purpose.  You may consider it solely for the limited issues that the defendant had the means to obtain a firearm and had access to firearms and was familiar with firearms.  You may consider it for those purposes, but you may consider [sic] it on any issue of bad character or criminal propensity or anything like that.  So that's the limitation of this testimony."

[4] In his final instructions, the judge included the following:

"You heard some evidence here about what you might consider a prior bad act on the part of the defendant, that is, possessing guns in the past. Again, ladies and gentlemen, I've already told you, you can consider that, but only for a limited purpose and that is not to determine that the defendant had some sort of bad character or

judges' instructions. Commonwealth v. Keown, 478 Mass. 232, 243 (2017). We also note that the evidence was not repeated during closing argument. For these reasons, and because the Commonwealth presented overwhelming evidence of the defendant's guilt, see part 1, supra, we are substantially confident that the jury's verdict would have remained the same even had the evidence not been admitted in error. See Montrond, 477 Mass. at 135-136. We therefore conclude that there was no substantial likelihood of a miscarriage of justice. See id.

3. Closing argument. The defendant argues that, during her closing argument, the prosecutor improperly characterized the "side light[s]" of the vehicle allegedly operated by the defendant at the time of the shooting as "not a common feature." Because defense counsel did not object at the time, the defendant must show that the alleged error created a substantial likelihood of a miscarriage of justice. See Commonwealth v. Taylor, 455 Mass. 372, 377 (2009). This he cannot do.

During closing argument, the prosecutor asked the jury to compare the photographs of the black Mazda owned by the defendant's girl friend (and occasionally driven by the

criminal propensity, that's not it. Instead, you could only consider it for the limited purpose of the defendant's familiarity with a weapon, with a handgun and his access to such weapons, that is, the means by which one could commit the crime. That's the only purpose you heard that testimony."

defendant) with still photographs from a surveillance video camera, which captured video footage of a dark-colored vehicle as it twice approached the group, as well as footage of the victim approaching the vehicle each time it arrived, and a photograph of the crime scene depicting three other automobiles on the street.[5]  The photographs clearly depicted side lights on the girl friend's vehicle as well as side lights on the automobile that was captured on the surveillance video.  The side lights did not appear on other automobiles in the crime scene photograph.[6]

"In closing argument, counsel may argue the evidence and the fair inferences which can be drawn from the evidence. . . . Counsel may also attempt to assist the jury in their task of

---

[5] The prosecutor said in part:

"Look at this Mazda.  It has a side light on both sides, just like that car.  Not something you see on a lot of cars.  We have some pictures of some other cars.  Here's a Maxima where [the victim's] blood was scattered.  There's no side light on that car, no side light on the car behind it, no side light on the Honda Civic in front of it.  That's not a common feature."

[6] The prosecutor concluded:

"I'm not going to stand here and tell you, that from those photographs and those photographs alone, that you can say that this is the car, but it sure does look like it, doesn't it?  And when you take all the other evidence that you have and you look at these photographs and you look at that picture, it's the black Mazda 626 that [the defendant] was driving."

analyzing, evaluating, and applying evidence. Such assistance includes suggestions by counsel as to what conclusion the jury should draw from the evidence" (quotations and citations omitted). Commonwealth v. Grimshaw, 412 Mass. 505, 510 (1992). See Commonwealth v. Cook, 419 Mass. 192, 204 (1994) (prosecutor's reference to photographs was based on evidence). As the other automobiles depicted in the crime scene photograph provide a basis in the evidence for pointing out that the distinguishing characteristic of the automobile in question was unusual, there was no error.

4. <u>Jury instructions on transferred intent</u>. During deliberations, the jury asked the following question: "If the defendant intended to shoot/kill someone/anyone, but not necessarily the victim/Julian, is it considered premeditated?" In response, the judge instructed the jury on transferred intent.[7] The defendant argues that the evidence did not support a transferred intent killing, and that the erroneous instruction gave rise to a substantial likelihood of a miscarriage of justice.[8] We disagree.

---

[7] The doctrine of transferred intent holds a defendant responsible for harm intended toward person X but inflicted on person Y instead. Whatever intent the defendant had to harm person X is transferred to person Y. See Commonwealth v. Taylor, 463 Mass. 857, 863 (2012).

[8] The defendant concedes that he failed to object to the transferred intent instruction at trial, and that therefore we

A jury instruction "is proper if it is supported by any hypothesis of the evidence." Commonwealth v. Colton, 477 Mass. 1, 11 (2017), quoting Commonwealth v. Silanskas, 433 Mass. 678, 689 (2001). Here, although the Commonwealth proceeded on the theory that the defendant deliberately premeditated the killing of the victim and not someone else at the scene, the evidence presented also supported a theory of transferred intent. That evidence included the fact that when he arrived at the scene, the defendant engaged in an argument with a number of people standing in a group that included the victim. However, the victim was trying to "calm everything down." He walked toward the defendant's automobile and said in a calm voice, "It['s] me, JM, it's me, your brother." The defendant responded, "[J]ust get the fuck off my window," and drove away. Approximately five minutes later, the defendant returned to the area and engaged in "a little more arguing" with people in a group. The victim once again approached the automobile, "just trying to still de-escalate the . . . situation." The victim leaned in toward the window and again said, "It's me, JM, it's your brother. I'm your brother." It was then that the defendant reached out of the window and shot the victim.

Based on these facts, the jury could have concluded that

_____

review any error for a substantial likelihood of a miscarriage of justice. Commonwealth v. Brown, 477 Mass. 805, 814-815 (2017).

the defendant intended to shoot someone other than the victim because the victim's statements could suggest that the defendant did not recognize the victim.  See Commonwealth v. Diaz, 431 Mass. 822, 823, 831-832 (2000) (concluding premeditation existed under transferred intent doctrine where defendant misidentified victim).[9]  Indeed, the fact that the jury asked a question about transferred intent demonstrates that one or more of the jurors thought that the evidence supported this theory of the killing.

In any event, to conclude that a transferred intent instruction was proper, we need not attempt to divine the theory upon which the jury relied to convict the defendant; we need merely conclude that the evidence presented was sufficient to support a theory of transferred intent, and we do.

5.  Review under G. L. c. 278, § 33E.  Finally, the defendant asks this court to reduce the degree of guilt pursuant to G. L. c. 278, § 33E, based on evidence that he was dependent on drugs at the time of the crime.  We have never before exercised our considerable power under § 33E to grant relief from a verdict of murder in the first degree because of drug dependence.  See, e.g., Commonwealth v. Mercado, 456 Mass. 198,

---

[9] Alternatively, the evidence permitted the jury to conclude that the defendant intended to shoot anyone in the victim's group because the defendant had argued with a number of them, and then happened to shoot the victim.  See Taylor, 463 Mass. at 864 (transferred intent instruction warranted where defendant argued with group of people, left, returned, and killed one member of group).

205, 212 (2010); Commonwealth v. Brum, 441 Mass. 199, 205, 208 (2004); Commonwealth v. Blake, 409 Mass. 146, 148, 163-164 (1991).  We decline to do so here.

Judgment affirmed.