# United States Court of Appeals
## For the First Circuit

No. 09-2665

EDWARD G. WRIGHT,

Petitioner, Appellant,

v.

JOHN J. MARSHALL,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Howard, Selya, and Thompson,
Circuit Judges.

Matthew A. Kamholtz, with whom Feinberg & Kamholtz was on
brief, for appellant.
Annette C. Benedetto, Assistant Attorney General, with whom
Martha Coakley, Attorney General, was on brief, for appellee.

September 1, 2011

**THOMPSON**, **Circuit Judge**.  In the early morning hours of May 14, 1984, Penny Anderson was murdered at her Springfield, Massachusetts apartment.  In 1985, a Superior Court jury convicted the petitioner, Edward Wright, of the crime.  Although Wright admitted that he had spent time with Anderson the night before her death, he claimed to have left her apartment before she was killed.

After a lengthy foray through the Massachusetts state courts unsuccessfully challenging his conviction, Wright filed a habeas corpus petition in federal court.  The district court initially denied relief but later granted a motion for reconsideration and held an evidentiary hearing to permit Wright to introduce new evidence.  This new evidence showed that according to a witness, another man, Allen Smalls, had made self-incriminating statements about Anderson's murder.  After considering the new evidence, the district court denied habeas relief.  Wright filed a timely appeal, arguing that his trial counsel was ineffective because he failed to make two specific arguments when objecting to the admission at trial of the prior grand jury testimony of a key witness, Arthur Turner,[1] and because he failed to request that the jury be instructed to take into account the possibility of mistaken

---

[1]   As discussed *infra*, Wright contends that his trial counsel should have argued that the testimony failed to satisfy the third and fourth prongs of the test for admissibility set forth in Commonwealth v. Daye, 393 Mass. 55, 469 N.E.2d 483 (1984), overruled on other grounds by Commonwealth v. Le, 444 Mass. 431, 828 N.E.2d 501 (2005).

identification in determining whether the commonwealth had proven guilt beyond a reasonable doubt.  Because Wright has failed to demonstrate ineffective assistance of counsel, we affirm the denial of his habeas petition.

## BACKGROUND

We begin with the facts, reviewed as described by the Massachusetts Supreme Judicial Court (SJC) in Commonwealth v. Wright, 411 Mass. 678, 678-80, 584 N.E.2d 621, 623 (1992), "supplemented with other record facts consistent with the SJC's findings."  Shuman v. Spencer, 636 F.3d 24, 27 (1st Cir. 2011) (quoting Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009)) (internal quotation marks omitted).

### The Crime

Wright and Anderson left a nightclub together on May 13, hours before Anderson was murdered.  After stopping to pick up her infant son and run some errands, they had sex in the car and then went to Anderson's apartment, arriving around midnight.  Wright was driving a car borrowed from a friend.  According to Wright, he and Anderson talked for about an hour and she let him out of the apartment at about 1:30 a.m.  He said he then went to a friend's house but because he did not want to wake the friend, Wright slept in the car.  At about 8 a.m. on May 14, Wright left for a previously planned visit to his sister's house in Delaware.

Sometime in the early morning hours of May 14, Anderson died from multiple stab wounds.  A neighbor heard a woman screaming shortly before 4 a.m., and then heard a car drive away.  The medical examiner estimated Anderson's time of death to be between 12:15 a.m. and 6:15 a.m.

Anderson's body was discovered that afternoon, after her family contacted the building maintenance supervisor and gained access to her apartment.  Investigation of the crime scene yielded evidence including a bloody imprint made by a shoe on the tiled kitchen floor of the victim's apartment.

**Phone Call and Turner's Testimony**

Perhaps the key testimony at trial came from Arthur Turner, the son of Wright's on-and-off-again girlfriend, Thelma. Wright and Turner had known each other for several years prior to the crime, living in the same house in Delaware for part of that time.

On the night of the murder, Turner got into a car accident while returning from a trip.  He arrived home in Springfield at around 1 p.m. on May 14, tired from having been up all night dealing with the accident.  At about 4:30 in the afternoon, he received a phone call from someone who identified himself as "Ed."  The caller said he had killed someone, provided Anderson's address, and described the victim as a "white bitch" who

was "on TIC."[2] He provided additional details about the murder weapon and added that Turner should watch the news or go get the newspaper and then he would know who the victim was.

Turner learned of Anderson's murder through media reports and told his sister about the phone call, which he attributed to Wright. His sister told their brother, who notified the police. Turner provided information consistent with what he had told his sister to the police and he signed a police statement on May 16. During grand jury proceedings on June 4, Turner's police statement was read into the record, and Turner reaffirmed the truth of everything in it.

Some six months later, after Turner's mother and Wright had reconciled, Turner changed his story. He still said he had received a telephone call from a person who identified himself as "Ed" and that the caller provided information about the murder, but he said he was no longer positive that the caller was in fact Wright.

Still, Wright's first name is Edward, and Wright was the only person Turner knew named "Ed." Phone records confirmed that a 36-minute phone call was made from Wright's sister's home in Delaware to Turner's number in Springfield at 4:41 p.m. on May 14. Wright's sister testified that she made all phone calls in question that day, but the commonwealth rebutted with testimony from

---

[2] "TIC" is apparently a street term for illegal drugs.

Turner's aunt, who said that Wright called her that day and asked for Turner's telephone number.

Given Turner's partial recantation, the commonwealth moved *in limine* to admit Turner's prior inconsistent grand jury testimony for its truth under Commonwealth v. Daye, 393 Mass. 55, 469 N.E.2d 483 (1984). Wright's counsel filed a written opposition arguing that Turner's grand jury testimony was inadmissible, citing Daye and requesting a *voir dire*. The trial judge conducted a *voir dire* and concluded that Turner's prior inconsistent grand jury testimony was admissible for its truth under Daye.

## Other Evidence

Following Turner's disclosure of information to the Springfield police, Wright was arrested in Delaware on May 16. During interrogation he told a Delaware police detective that he was with Anderson on the night in question and described her as a "whore" who was "on TIC."

Traces of blood were found inside the car Wright drove the night of Anderson's murder. However, the commonwealth called the owner of the car, Vernal Archie, as a witness, and he testified that a few weeks before the murder, Wright had been stabbed and Archie had driven him to the hospital in the same car.

Additionally, a bloody shoe print found at the murder scene could have been made by Wright's sneakers, which police

confiscated on May 16.  But the sneakers were a popular style and no traces of blood were detected on them.

## How We Got to This Point

Wright was convicted of murder by a jury on April 10, 1985, and sentenced to life in prison.  Wright filed two separate motions for a new trial, both based in part on allegations of newly discovered evidence (primarily, an affidavit by Lee Britt, mother of Smalls, implicating Smalls in the murder).  After holding an evidentiary hearing, the trial court denied both motions.  The SJC consolidated Wright's appeal from the denial of his motions with his direct appeal of the conviction, and affirmed everything. Wright, 411 Mass. at 679, 584 N.E.2d at 623.  The SJC specifically noted that the trial judge did not abuse his discretion in denying Wright's first motion for a new trial based on a finding that the newly discovered evidence "lacked probative value."

In September of 1992, Wright sought relief in federal court, filing a petition for a writ of habeas corpus in the District of Massachusetts pursuant to 28 U.S.C. § 2254.  In 1993, Wright moved for voluntary dismissal of his first federal habeas petition and returned to state court.

Wright filed a third motion for a new trial, in which he first raised the ineffective assistance of counsel claims at issue in this appeal.  The motion was denied by the trial court in March of 1996.  The SJC denied leave to appeal, holding that all of the

-7-

claims asserted were procedurally defaulted because they had already been addressed or could have been addressed during trial or on direct review. Commonwealth v. Wright, No. SJ-96-0262, slip op. at 2 (Mass. Aug. 12, 1997).

In 1998, Wright filed a second petition for a writ of habeas corpus in federal district court, the case from which this appeal has arisen.[3] The district court denied the petition in 1999, rejecting Wright's invitation to reach the merits of his procedurally defaulted claims based on new evidence of actual innocence.[4] The evidence included Britt's testimony during the state court hearing on Wright's first motion for a new trial, in which she claimed that Smalls had admitted the murder to his girlfriend (who then relayed the statement to Britt), and Britt's claim that on the day of the murder, Smalls had tried to sell a knife possibly similar to the murder weapon. The district court stated that "[i]f properly corroborated, this information would provide troubling new evidence of actual innocence." But because the Massachusetts trial court had rejected the new evidence as either hearsay or not credible, the district court accorded its finding a presumption of correctness.

---

[3] Wright originally asserted thirteen grounds for relief, only two of which he pursues on appeal.

[4] Neither party challenged the district court's finding that Wright's claims had been procedurally defaulted.

-8-

Wright sought reconsideration and an evidentiary hearing, bolstering his contentions with additional evidence including an affidavit from Smalls' former girlfriend, Maria Rivera Ramos, reciting that he had threatened to kill her "like I did [Anderson]." The district court appointed counsel for Wright and held a hearing on his motion for reconsideration. In 2001, at the parties' request, the district court stayed federal proceedings without prejudice so Wright could present the new affidavit to the state court and seek forensic testing of the knife sold by Smalls, which was in the possession of the state court clerk's office.

Forensic testing of the knife was inconclusive. In 2003, Wright filed a fourth motion for new trial in state court, arguing that trial counsel was ineffective for failing to locate Ramos earlier. The state trial court denied the motion and the SJC declined to allow an appeal.

Wright returned once more to federal court in 2006, to resume the proceedings which had been stayed five years earlier. After conducting an evidentiary hearing, the district court in 2008 allowed Wright's motion for reconsideration based on evidence of actual innocence and permitted him to proceed on the merits of his procedurally defaulted claims. See House v. Bell, 547 U.S. 518 (2006).

Both parties briefed and argued the merits of those claims and, in an order dated November 9, 2009, the district court

denied Wright's petition, finding that he had failed to demonstrate that his trial was tainted by constitutional error. With respect to the ineffective assistance of counsel claims, the district court found that Wright failed to show a reasonable probability that the result of his trial would have been different if trial counsel had launched a more focused attack on the admissibility of Turner's grand jury testimony. Similarly, the district court found that Wright had not been prejudiced by trial counsel's failure to request a misidentification instruction.

The district court granted a certificate of appealability limited to two claims of ineffective assistance of counsel based on trial counsel's failure to object to the admission of Turner's grand jury testimony pursuant to Daye and failure to request a jury instruction on misidentification. On appeal, Wright argues that trial counsel's performance was deficient because he failed to argue specifically that Turner's grand jury testimony was a mere confirmation of a statement by an interrogator (which would make it inadmissible under the third prong of Daye) and that the commonwealth failed to introduce sufficient corroborating evidence (which would make it inadmissible under the fourth prong of Daye). Wright asserts a second claim of ineffective assistance based on trial counsel's failure to request a jury instruction on misidentification.

**DISCUSSION**

We review a district court's denial of a habeas petition *de novo*. Schuman, 636 F.3d at 30. When we conduct such a review, the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), requires that we assume a highly deferential posture toward a state court decision rejecting a federal claim on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010). Here, however, the district court determined that Wright's claims were not adjudicated on the merits in state court and consequently evaluated them *de novo*. See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) ("[W]e can hardly defer to the state court on an issue that the state court did not address."). The parties do not challenge that determination on appeal, and we therefore also proceed to review Wright's ineffective assistance claims *de novo*.

We can grant habeas relief only if we identify an error which had a "substantial and injurious effect or influence in determining the jury's verdict." Frye v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)) (internal quotation marks omitted); Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, Wright must show both that counsel's performance was deficient and that it resulted in prejudice. See Strickland v.

-11-

Washington, 466 U.S. 668, 687 (1984); Shuman, 636 F.3d at 31. If he falls short on either requirement, his claim fails. See Strickland, 466 U.S. at 697.

Deficient performance means that trial counsel's representation failed to meet "an objective standard of reasonableness." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 688) (internal quotation marks omitted). Counsel's performance is deficient only if no competent attorney would have acted as he did. Id. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

Wright also must demonstrate prejudice to show ineffective assistance of counsel. He must show a "reasonable probability" that if counsel had acted differently, his trial would have had a more favorable outcome. Tevlin, 621 F.3d at 66 (quoting Porter v. McCollum, 130 S. Ct. 447, 453 (2009) (per curiam)) (internal quotation marks omitted).

## I. Admission of Turner's Grand Jury Testimony

Wright's first ineffective assistance claim is based on trial counsel's failure to advance certain specific arguments when arguing that Turner's grand jury testimony was inadmissible. We elaborate. At the time of Wright's trial, whether a prior

-12-

inconsistent statement made before a grand jury could be admitted for its probative value was governed by Daye, 393 Mass. at 75, 469 N.E.2d at 495-96. Daye spells out a four-point test: a prior inconsistent statement made before a grand jury is admissible for its truth when (1) the statement was made under oath before a grand jury; (2) the witness could be effectively cross-examined as to its accuracy; (3) it was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator; and (4) other evidence was presented which tended to prove the issue.[5] Id.

Wright hones in on Daye's third and fourth requirements. He contends that counsel erred by failing to argue the inadmissibility of Turner's testimony because it fell short on the third Daye factor (i.e., because it was a mere confirmation of an allegation made by an interrogator – the prosecutor who questioned Turner in front of the grand jury – rather than Turner's own statement) and the fourth Daye factor (i.e., the commonwealth failed to introduce sufficient corroborative evidence).

To be clear, this is not a case in which trial counsel failed to object at all. Wright's attorney repeatedly objected to the admission of Turner's grand jury testimony. In fact, he filed

---

[5] Although the SJC later reformulated the requirements for admission of prior inconsistent statements made to a grand jury, see Commonwealth v. Clements, 436 Mass. 190, 192-93, 763 N.E.2d 55, 57-58 (2002), we review counsel's performance using the law as it existed at the time of trial. See Strickland, 466 U.S. at 689-90.

-13-

a five-page opposition to the commonwealth's motion *in limine* which sought to introduce the grand jury testimony. The opposition began with a summary of Daye, recited the four Daye factors, and repeatedly cited to Daye. Although the opposition chiefly focused on state constitutional grounds, it cited to Daye in support of a request that the court conduct a *voir dire* before admitting Turner's testimony into evidence, a request which the trial judge granted.

After the *voir dire*, when the trial court ruled that it would admit Turner's grand jury testimony, trial counsel again cited Daye in his objection. So Wright's argument is not that counsel failed to object, but that his objection was not properly focused on the third and fourth Daye factors. We examine each in turn.

### Turner's Testimony Was More Than a Confirmation

The third Daye factor precludes the admission of a prior inconsistent statement made to a grand jury if it is the statement of the interrogator rather than the statement of the witness. Daye, 393 Mass. at 75, 469 N.E.2d at 496. "[A] judge should exercise discretion in admitting a witness's 'yes' or 'no' answer to a leading, fact-filled question posed at the grand jury proceeding as probative evidence regarding the facts alluded to in the question." Id. at 74, 469 N.E.2d at 495. Wright claims that his trial counsel's performance was deficient because he did not

-14-

specifically argue that Turner's testimony was a mere confirmation of a statement made by the Assistant District Attorney (ADA).[6]

Turner's grand jury testimony began with the ADA eliciting from Turner his name, address, that he had known Wright for several years, and that he had spoken with Wright on the phone on May 14, the day of the murder. The ADA then showed Turner his police statement, had him identify it by his signature, and then read it into the record.

The ADA asked no leading or fact-filled questions. Before and after she read Turner's statement into the record, she told Turner that he could "change, add, correct or delete" anything. Turner did not change anything. Instead, he affirmed the truth of the statement. We have no trouble concluding on these facts that Turner's grand jury testimony was his own statement and not a mere confirmation of a statement made by the ADA.

Trial counsel's failure to argue against the admission of Turner's testimony based specifically on the third Daye factor was thus not deficient performance under Strickland. See Tevlin, 621 F.3d at 66.

---

[6] Wright also complains that Turner's grand jury testimony is flawed because it is based on his police statement, which Turner signed while exhausted and only after the police told him they already knew that Wright committed the murder. These were proper areas of inquiry during Turner's testimony at trial, but they did not make the grand jury testimony inadmissible under Daye.

-15-

## Corroborating Evidence

The remainder of Wright's Daye argument fares no better. He claims that trial counsel erred by not arguing specifically that Turner's grand jury testimony was inadmissible under the fourth Daye factor because it was not supported by corroborating evidence. Wright contends that the commonwealth was required to introduce evidence corroborating that he was the caller who confessed to Turner. On the other hand, the commonwealth claims Daye obligates it to introduce evidence corroborating Wright's commission of the crime. We need not resolve this issue, because the commonwealth introduced evidence (which we detail below) which sufficiently corroborated both propositions.

The evidence showed that Wright was seen entering Anderson's apartment with her in the early morning on the day she was murdered, that traces of blood were found in the car he was driving that night, that he owned shoes of a type consistent with the bloody shoe print found at the scene of the crime, and that in his statement to the Delaware police he described the victim in similar terms as did the person who called Turner. Additionally, the commonwealth introduced phone records showing that a call was made from Wright's sister's home in Delaware (where Wright was staying) to Turner's home on the afternoon in question. Although Wright and his sister claimed that Wright did not make the call,

Turner's aunt testified that he called her that day and asked for Turner's phone number.

To perform effectively, trial counsel is not required to make every possible objection to the admission of evidence, and the decision not to make this particular argument was within the range of decisions a competent attorney could make under these circumstances. See Tevlin, 621 F.3d at 66.

Because Wright has failed to show deficient performance under Strickland, his ineffective assistance claim fails to the extent it relies on trial counsel's failure to address Daye adequately. See Tevlin, 621 F.3d at 66.

## II. Failure to Request a Misidentification Instruction

Wright next complains of his trial counsel's failure to request a jury instruction on misidentification. He contends that such an instruction was necessary for the jury to understand that the caller who confessed to the murder might not have been Wright.

Clearly Turner's testimony about the phone confession was a crucial piece of evidence in the case. Wright claims that Turner may have misidentified the caller because of pressure from the police to name Wright and because Turner was exhausted – he had been in a car accident and slept very little the night before he signed the police statement. Therefore, Wright argues that trial counsel's failure to request a jury instruction on

-17-

misidentification amounted to deficient performance that affected the outcome of his trial.

Wright cites to United States v. Kavanagh, 572 F.2d 9 (1st Cir. 1978), and to cases from other circuits to support his argument that a misidentification instruction was necessary. See United States v. Greene, 591 F.2d 471, 476-77 (8th Cir. 1979); United States v. Hodges, 515 F.2d 650, 653 (7th Cir. 1975); United States v. Holley, 502 F.2d 273, 275 (4th Cir. 1974); United States v. Telfaire, 469 F.2d 552, 555 (D.C. Cir. 1972). These decisions note the importance of charging the jury on the possibility of misidentification "in cases where the evidence suggests a possible misidentification." See Kavanagh, 572 F.2d at 10. However, these cases are easily distinguished on the facts, because they all involve identification of a stranger rather than identification of a person with whom the witness was well-acquainted. See Greene, 591 F.2d at 473; Kavanagh, 572 F.2d at 10-11; Hodges, 515 F.2d at 651; Holley, 502 F.2d at 274; Telfaire, 469 F.2d at 554-56.

Identification evidence, including voice identifications, must be "received with caution and scrutinized with care." United States v. Angiulo, 897 F.2d 1169, 1204-05 (1st Cir. 1990) (quoting proposed jury instruction, which the court found to be substantively correct). These concerns are lessened substantially, however, when the identification is based on a witness's pre-existing relationship with a defendant. See United States v.

Gilbert, 181 F.3d 152, 163 (1st Cir. 1999) (analyzing admissibility of voice identification by witnesses familiar with the defendant's voice); see also Commonwealth v. Pressley, 390 Mass. 617, 618, 457 N.E.2d 1119, 1120 (1983).

At the time Turner identified Wright as the caller, they had known each other for more than three years, living in the same household for part of that time. Although Wright stresses that their relationship was hostile, that they had never spoken over the phone, that Turner was exhausted when he received the phone call, and that Turner eventually expressed doubt about his identification of Wright as the caller, none of these change the fact that Turner knew Wright well enough to identify his voice as he had heard Wright's voice in person many times. Although by the time of trial Turner equivocated as to whether he recognized the voice of the caller, there was enough in the record about his prior contacts with Wright from which the jury reasonably could infer that Turner recognized the caller's voice as Wright's. But in any event, Turner testified that he identified the caller as Wright because the caller said he was "Ed," and Turner did not know anyone else with that name.

Jury instructions also must be viewed as a whole, not as individual provisions in isolation. Estelle v. McGuire, 502 U.S. 62, 72 (1991). We have upheld the refusal to give a misidentification instruction in a voice identification case when

the issue was substantially covered in the more general jury instructions. Angiulo, 897 F.2d at 1205-06. As was true in Angiulo, the charge in this case included general instructions on witness credibility and the commonwealth's burden of proof which emphasized the requirement that the jury scrutinize all of the witnesses' testimony carefully.

Ultimately we need not decide whether trial counsel's failure to request a misidentification instruction was deficient performance because Wright has failed to show a reasonable probability that it affected the outcome of his trial. See Tevlin, 621 F.3d at 66. If trial counsel had requested a misidentification instruction, the trial judge would not have been required to give it because Turner's identification was based on the caller's self-identification and on Turner's prior relationship with Wright. And even if the trial court had given such an instruction, Wright has failed to show a reasonable probability that the jury would not have convicted him. If the jury had been specifically instructed to scrutinize identification testimony, most likely he would still have been convicted based on the strength of the other evidence against him, including evidence that he had been seen entering Anderson's apartment with her on the night she was killed, that traces of blood were found in the car he drove that night, that a bloody shoe print at the scene could have been made by his sneakers, that phone records showed that a call had been made from

-20-

Wright's sister's house to Turner's house that afternoon, and the similarity between Wright's description of the victim when he was arrested and the caller's description of the victim. Accordingly, he has failed to show prejudice under the Strickland standard, and that failure dooms his second ineffective assistance claim.

## CONCLUSION

We affirm the district court judgment denying Wright's habeas corpus petition.