# United States Court of Appeals
## For the First Circuit

No. 09-2428

ALFREDO COMPANONIO,

Petitioner, Appellant,

v.

STEVEN O'BRIEN,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, U.S. District Judge]

Before

Boudin, Lipez and Howard,
Circuit Judges.

Chauncey B. Wood, with whom Wood & Nathanson, LLP was on
brief, for petitioner.
Natalie S. Monroe, Assistant Attorney General, with whom
Martha Coakley, Attorney General, was on brief, for respondent.

March 5, 2012

**HOWARD**, **Circuit Judge**.  Alfredo Companioni appeals the district court's denial of his request for habeas corpus relief from a life sentence imposed after his 1987 Massachusetts conviction for first degree murder.  28 U.S.C. § 2254.  The crux of the petition is Companioni's claim that he received ineffective assistance of counsel in his murder trial because his attorney failed to pursue a defense based on his mental illness.  The Massachusetts Supreme Judicial Court ("SJC") rejected the ineffective assistance claim, finding both that Companioni had been competent to stand trial and assist in his defense, and that he had instructed his attorney not to present a mental impairment defense.  See Commonwealth v. Companonio, 833 N.E.2d 136 (Mass. 2005).[1]  We affirm.

## I. FACTUAL BACKGROUND

We recount the facts as recited by the SJC, supplementing them with other record facts that are consistent.  Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009); Healy v. Spencer, 453 F.3d 21, 22 (1st Cir. 2006).

During the evening of May 19, 1986, Companioni and Santos Lopez arrived at the apartment of Gilbert Nohoya in Brockton, Massachusetts.  The three were friends, and Companioni had been living in Nohoya's apartment for several months.  Shortly after

---

[1] State and federal case captions and records of prior proceedings refer to the petitioner as "Alfredo Companonio," but counsel informs us that his surname is "Companioni."

arrival, Companioni got into a brief argument with Nohoya, who brandished a knife. Tempers cooled; the knife was put away; and the altercation apparently concluded without further incident. A short time later, Nohoya mentioned that the following day was his birthday. To celebrate, each of the men drank a bottle of champagne, and Companioni and Lopez snorted several lines of cocaine. The trio then went for a drive in Companioni's car, and took turns firing Companioni's .22 caliber automatic pistol into the air. Afterwards, they returned to Nohoya's apartment.

Later in the evening, Companioni's cousin, Celia Vasquez, stopped by Nohoya's apartment. The three men were drinking at the time, and Vasquez later testified that all three appeared to be drunk. Vasquez went into a bedroom with Nohoya and Companioni, where Nohoya apparently touched Vasquez, causing Companioni to become "a little bit upset." Vasquez left shortly thereafter, and the men continued to drink.

Several hours later, Companioni announced that he was going to go out and get "the pistol" so that they could "try out the .38." Within five minutes after leaving the apartment, he returned with a .38 caliber handgun. Upon his return, Companioni said "Let's go for a ride," and then without warning fired once at Nohoya and once at Lopez. Nohoya was hit in the chest, and Lopez was hit on the finger. Nohoya died within a minute of being shot. Lopez escaped out a back door and called the police from a nearby

payphone, as Companioni drove away. The police found Companioni the following morning, sleeping at a friend's nearby apartment. He was arrested and charged with killing Nohoya.

At his trial on a single count indictment charging him with first degree murder, Companioni unsuccessfully urged the jury to find that someone else could have shot Nohoya, that the killing had been accidental, or that he had been too impaired by alcohol or drugs to form the specific intent to kill.[2] Upon conviction, he was sentenced to life without parole.

## II. POST-CONVICTION PROCEEDINGS

### A. Motion For New Trial

Almost five years after his conviction, Companioni filed a motion for a new trial in which he advanced an ineffective assistance of counsel claim based on trial counsel's failure to present a mental impairment or illness defense. The Superior Court granted the motion, but on appeal the SJC directed the Superior Court to conduct an evidentiary hearing and, specifically, to take testimony from trial counsel about the nature and the extent of the

---

[2] First degree murder in Massachusetts requires "deliberately premeditated malice aforethought." See Mass. Gen. Laws ch. 265 § 1. While Massachusetts does not recognize the defense of "diminished capacity," Companonio, 833 N.E.2d at 142 n.7, it does permit a defendant to "produce expert testimony on the issue whether or not the impairment of his mental processes precluded him from being able to deliberately premeditate." Id. (quoting Commonwealth v. Gould, 405 N.E.2d 927 (Mass. 1980)).

defendant's instructions to him concerning trial strategy. Commonwealth v. Companonio, 650 N.E.2d 351, 351 (Mass. 1995).

At the evidentiary hearing, held before the same judge who had presided over Companioni's trial, the court heard not only from trial counsel but also from four doctors, three of whom had evaluated Companioni before his trial. Defense counsel testified that because he had become aware of mental health issues affecting Companioni, he had retained an expert, Dr. Robert Moore, to examine him. Dr. Moore concluded that Companioni was not suffering from any major mental disorder and was competent to stand trial and to assist in his defense. Companonio, 833 N.E.2d at 141; see also Commonwealth v. Companioni, Crim. No. 82617, Order on Defendant's Motion For New Trial at 4 n.3 (Mass. Super. Sept. 6, 2000) ("New Trial Order"). He also found "no substantial evidence" that Companioni "lacked the capacity to appreciate the nature of his actions or that he was unable to conform his behavior to the . . . law at the time of the offense," and concluded that Companioni was responsible for his behavior at the time of the killing. New Trial Order at 4 n.3.

As a result of Dr. Moore's findings, trial counsel testified, a "classic insanity defense" did not appear viable. Companonio, 833 N.E.2d at 141. Counsel further testified that despite Dr. Moore's report, he continued to press Companioni, through an interpreter, about the possibility of pursuing a defense

-5-

based on mental disease or defect. Companioni appeared to understand what was being discussed, and rejected counsel's entreaties, both denying that he committed the crime and saying that "crazy people go to hell." Id. at 142. Counsel further testified that on the first day of trial, he met with Companioni, his brother and an interpreter provided by the court and again suggested presenting a mental impairment defense. Companioni, however, remained steadfast in his opposition. Counsel testified that he concluded at that point that Companioni understood the options that had been presented and had made a decision. Although defense counsel disagreed with Companioni's decision, he abided by it. Companioni and his brother both testified that these meetings and conversations never took place, and that counsel never suggested the possibility of pursuing a defense based on mental illness or impairment.

In addition to being examined at counsel's request by Dr. Moore, Companioni had also been transferred three times prior to trial to Bridgewater State Hospital to address mental health concerns. The first hospitalization, in June 1986, followed Companioni's complaints of hearing voices at night. (It was this transfer that triggered defense counsel's consultation with Dr. Moore.) He was examined by Dr. Jorge Veliz, the hospital's director of clinical services, to determine both his competency to

stand trial, see Mass. Gen. Laws ch. 123, § 15(b),[3] and his fitness to await trial in jail, see id. § 18(a)[4]. Dr. Veliz diagnosed Companioni with schizo-affective and personality disorders, as well as cocaine dependency, but also concluded that he was competent to stand trial and would be able to communicate with his attorney. Dr. Veliz further found that Companioni was not a threat to himself or others and could be released from Bridgewater and returned to the jail.

The next Bridgewater transfer occurred in December 1986. Dr. Leonard Bard, Bridgewater's assistant medical director, evaluated Companioni to determine only whether he could remain in jail, pursuant to Section 18(a). At his admission it was reported that Companioni was suffering from hallucinations and was selling his medication. Although jail officials reported suicide threats, Companioni denied them. Dr. Bard ultimately concluded that Companioni was suffering from "a major mental illness that can be best described as paranoid schizophrenia." Nevertheless, he added

---

[3] Massachusetts assesses competency to stand trial on the basis of "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." Commonwealth v. Companonio, 833 N.E.2d at 144 (quoting Commonwealth v. Goodreau, 813 N.E.2d 465, 472 (Mass. 2004)); see also Brown v. O'Brien, 666 F.3d 818, 825 (1st Cir. 2012) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

[4] Massachusetts law requires that an assessment of this nature be carried out whenever an inmate is transferred due to mental health concerns. See Mass. Gen. Laws ch. 123 § 18(a).

that Companioni's illness was "somewhat" controlled by medication and that he could be returned to the jail to await trial.

Companioni's final pre-trial admission was on February 6, 1987. After he had set a fire in his cell, he was hospitalized to determine whether he could remain in a jail setting. Companioni denied any hallucinations, reporting only that he wanted to get some air in his cell. He was returned to the jail roughly one month later, which was approximately six weeks prior to trial.

Drs. Veliz and Moore both testified at the hearing on the new trial motion, as did Dr. Malcolm Rodgers. Dr. Rodgers, a psychiatrist, had been retained by the Commonwealth to prepare an opinion regarding Companioni's mental state at the time of the shooting, based on a review of Companioni's treatment records. All three concluded that Companioni had been competent to stand trial.[5]

Companioni called Dr. Bard, who repeated his pretrial diagnosis of paranoid schizophrenia, but offered no views regarding either Companioni's competency to stand trial or his capacity to form the specific intent to kill at the time of the shooting. Companioni also submitted an affidavit from another psychiatrist, Dr. Bernard Katz, indicating that Companioni suffered from "major

---

[5] Dr. Rodgers testified that Companioni did not lack the ability to deliberately premeditate. He also addressed an earlier report that he had prepared in which he concluded that Companioni was competent to stand trial.

-8-

mental illness" and could have lacked the capacity to form the intent to kill in May 1986.

The Superior Court's findings on which it based its denial of a new trial may be summarized as follows. Trial counsel investigated the issue of Companioni's mental health, including retaining Dr. Moore. Counsel's testimony was credited over the account provided by Companioni and his brother, and, in light of Companioni's insistence that he was innocent and that he did not want to be deemed "crazy," the decision not to pursue the "mental disease or defect" defense was reasonable. Companionio, 833 N.E. 2d at 142. Moreover, the record was devoid of evidence that Companionio lacked the requisite mental capacity to premeditate or form the mental state required for malice. It was, therefore, also not unreasonable for trial counsel to forego further exploration of Companioni's mental health as a basis for a defense. Id.

In addition to these findings, in considering the defendant's capacity to make decisions about his defense, the Superior Court also noted that both Dr. Moore and Dr. Veliz found Companioni competent to stand trial, id. at 143-44, and that such a finding in Massachusetts "includes the ability of a defendant to assist and consult with counsel in the preparation of a defense." New Trial Order at 9 n.7. Dr. Moore, the defense's putative expert, explicitly stated that Companioni was able to assist his attorney in his defense.

Companioni subsequently sought a hearing on an amended motion for new trial. In support of this request, new counsel arranged for Dr. Bard to re-interview Companioni and to review Companioni's medical records and excerpts of the trial transcript. On the basis of that assessment, Dr. Bard stated in a May 2003 affidavit his belief that Companioni lacked the capacity to form the specific intent to kill in 1986 (the "2003 Affidavit"). The amended motion was denied in September 2003.

## B. Appeal to the SJC

As relevant here, Companioni argued in his appeal from the denial of his new trial motion that he was denied effective assistance of counsel at trial in two ways: first, because his attorney did not challenge Companioni's competency to stand trial, and second, because counsel did not pursue the mental impairment defense.

### 1. Competency

In arguing that he should not have stood trial, Companioni relied on his three pre-trial admissions to Bridgewater; his conduct during incarceration in the month prior to trial; an opinion that the upcoming trial worsened his mental health; the observations of trial counsel; and a post-conviction admission to Bridgewater that resulted in a finding of a twenty month period of incompetency to serve his sentence. Companonio, 833 N.E.2d at 143. He also argued that the pretrial observations of Drs. Veliz and

-10-

Moore were of little value because they took place several months before trial and paled against his post-conviction commitment to Bridgewater. Id.

Affirming the denial of a new trial, the SJC observed that Dr. Veliz's competency report reflected the circumstances of Companioni's first Bridgewater admission. The court noted that, although Dr. Moore did not examine the records from Companioni's first Bridgewater admission, he did review Dr. Veliz's accurate report of that admission. Id. at 144. The SJC characterized the one-page record of Companioni's February 1987 Bridgewater admission as "disclos[ing] nothing of significance," given that it lacked any indicia of mental illness. Id. The court further remarked that any claim that Companioni's condition worsened as a result of his return to jail for the six weeks prior to trial was speculation, noting that the transfer back to the jail conformed to the recommendations of the Bridgewater staff. Id. Finally, the SJC determined that Companioni's post-conviction Bridgewater commitment was "essentially irrelevant," because the relevant timeframe for evaluating competency is the time of trial. Id. at 145 (citing Commonwealth v. Hill, 375 N.E.2d 1168, 1175 (Mass. 1978)).

While the SJC acknowledged that a contemporaneous competency evaluation would have been preferable, the court also observed that Companioni submitted no expert testimony that he was incompetent and that when he testified at the Superior Court

-11-

evidentiary hearing, he made no claim that he had not understood the trial proceeding or was unable to communicate with counsel. Id. The court also rejected Companioni's argument that a first degree murder defendant who is diagnosed with a major mental illness, but who nevertheless refuses to consider an insanity defense, necessarily has raised "a substantial question of possible doubt" as to competency. The SJC concluded that, while Companioni "may have been diagnosed, prior to trial, with a psychiatric condition . . . despite that condition, he was competent to stand trial." Id.

### 2. Mental Impairment Defense

In denying Companioni's claim that trial counsel was ineffective for failing to present a mental impairment defense, the SJC noted that counsel had investigated the defense by retaining Dr. Moore. The court also observed that Companioni's post-trial failure to present any expert opinion testimony that he lacked the requisite mental capacity by itself doomed his ineffective assistance claim. Id. at 146. Moreover, the SJC agreed with the Superior Court that counsel's decision to forego the mental impairment defense was not unreasonable, given that the decision was "based on [Companioni's] personal choice against the advice of counsel." Id.

-12-

Finally, the SJC found no error in the denial of a second evidentiary hearing, noting that Dr. Bard's 2003 affidavit raised "no substantial issue." Id.

## C. Federal Proceedings

Invoking 28 U.S.C. § 2254, Companioni filed the instant petition in federal district court. He asserted four grounds for relief, three of which are within the scope of this appeal: 1) that his trial counsel was constitutionally deficient for failing to demand a hearing to determine Companioni's competency to stand trial; 2) that the state courts erred in finding him competent to waive a mental illness defense and to stand trial; and 3) that trial counsel was ineffective in failing to present a defense that the combined effects of mental illness, drugs, and alcohol prevented Companioni from forming the intent and premeditation necessary for a first degree murder conviction.

After denying Companioni's request for an evidentiary hearing, the district court rejected all of his claims and dismissed the petition with prejudice. The heart of the court's reasoning was that the state courts were permitted to conclude that Companioni was competent to stand trial and that conclusion was fatal to all of Companioni's habeas claims. This appeal followed.

## III. DISCUSSION

Our review is de novo. Yeboah-Sefah, 556 F.3d at 56. Habeas relief may be granted only if the state adjudication was

-13-

contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or if it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2); Grant v. Warden, Me. State Prison, 616 F.3d 72, 75-76 (1st Cir. 2010), cert. denied, 131 S. Ct. 948 (2011). A state court decision is contrary to clearly established federal law if it "contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court" but reaches a different result. John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009) (internal quotations omitted). A court unreasonably applies clearly established law if it applies Supreme Court precedent to the facts of the case in an objectively unreasonable manner, Williams v. Taylor, 529 U.S. 362, 405 (2000), such as reaching a result that is "devoid of record support" for its conclusion. McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir. 2002) (en banc). A state court's factual findings are presumed to be correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Torres v. Dennehy, 615 F.3d 1, 5 (1st Cir. 2010), cert. denied, 131 S. Ct. 1038 (2011);[6] see also

<hr>

[6] Companioni makes arguments based on section 2254(d)(2), as well as 2254(e)(1). The "relationship between the standards enunciated in [the two sections] remains unclear." Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). Both, however, encompass deference to state court findings, and "we apply a presumption of

Clements v. Clarke, 592 F.3d 45, 47 (1st Cir.), cert. denied, 130 S. Ct. 3475 (2010) (observing that presumption of correctness applies to factual determinations made by both state trial and appellate courts).[7]

Companioni here reprises the argument that he was denied effective assistance of counsel because his trial counsel failed to investigate and develop a mental illness defense. Relatedly, he asks us to remand this case to the district court for an evidentiary hearing on whether he was competent to waive the defense prior to trial. He also argues that he was denied due process when the state court refused to conduct a second post-conviction hearing devoted solely to his competency to stand trial.

## A. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, Companioni must demonstrate both that trial counsel's performance was deficient and that there was prejudice as a result. Harrington v. Richter, 131 S. Ct. 770, 787 (2011). "If he falls short on either requirement, his claim fails." Wright v. Marshall,

---

correctness to the trial court's factual findings and also examine whether there has been an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." John, 561 F.3d at 92.

[7] Review of the facts is limited to "the record that was before [the] state court." Brown, 666 F.3d at 822 n.3 (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1400 (2011)). Accordingly, we decline to consider the affidavit from Santos Lopez that Companioni submitted to the district court.

656 F.3d 102, 108 (1st Cir. 2011) (citing Strickland v. Washington, 466 U.S. 668, 697 (1984)). Performance is measured against an "objective standard of reasonableness," id. (citation omitted), and it is constitutionally deficient "only if no competent attorney would have acted as [counsel] did." Id. Moreover, we start from the presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. (quoting Strickland, 466 U.S. at 690). Prejudice is established by showing that there is a reasonable probability that the trial would have had a more favorable outcome if trial counsel had acted differently. Id.

Turning to the particulars at hand, as previously noted the SJC affirmed the Superior Court's determination that Companioni was competent to stand trial, a finding that on these facts includes a determination that he was competent to confer with his lawyer about whether to pursue a defense based on his mental health. See Robidoux v. O'Brien, 643 F.3d 334, 339 (1st Cir. 2011) (observing that a finding of competency requires the subsidiary findings that the defendant understands the nature of the proceedings against him, and that he is able to assist counsel in his defense), cert. denied, 132 S. Ct. 866 (2011); see also Godinez v. Moran, 509 U.S. 389, 396 (1993) (a competency finding encompasses the ability to "consult with counsel and to assist in preparing his defense" (quoting Drope v. Missouri, 420 U.S. 162,

-16-

171 (1975))); cf. Dean v. Superintendent, Clinton Corr. Facility, 93 F.3d 58, 61 n.1 (2d Cir. 1996) (explaining that a failure to pursue a mental impairment defense when the client objects to the presentation of one is not ineffective assistance because that decision "belongs to the client").  If the SJC's competency determination stands, the ineffective assistance claim must fail because there can be no prejudice if Companioni was competent to instruct counsel not to further pursue the mental illness defense.

Companioni attacks the state courts' competency finding as an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(2); see also Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 832 (1st Cir. 1997) (noting that competency is a question of fact) (citing Thompson v. Keohane, 516 U.S. 99, 111 (1995)).  In light of the record evidence in the state court proceedings, however, the claim fails.[8]

---

[8] The parties' briefs reflect a skirmish over the precise details of Companioni's appellate claims. His reply brief contains the following summary:

> [C]ounsel should have obtained Dr. Bard's Bridgewater evaluation, developed a mental illness defense (including an opinion from a mental health expert) and then discussed it with Companioni. Assuming Companioni were to refuse to consider the defense on the same grounds that he did, then trial counsel should have obtained an expert opinion about Companioni's competency to waive a mental illness defense in light of the paranoia, hallucinations and refusal to discuss the defense, and then raised the issue with the trial judge.

Companioni points to evidence which he says should have dictated a finding of incompetency before the SJC. First, he argues that Dr. Moore's conclusion that Companioni was competent to stand trial carries no weight because Moore did not review Companioni's Bridgewater records and he was unaware of Dr. Bard's later report that Companioni suffered from paranoid schizophrenia. He further argues that his own denial of mental illness and his refusal to pursue a defense based on that illness was itself proof of his incompetency. Additionally, Companioni refers to comments made by defense counsel that he was "disassociated with the facts of the case," as well as those that he made to defense counsel about "crazy people" going to Hell.[9]

Those facts, taken alone, may constitute some evidence of incompetency. But that is not the exclusive take on the evidence. Both the Superior Court and the SJC also considered numerous countervailing facts. For example, whatever shortcomings Dr. Moore's opinions may have possessed, they were echoed to a large

This explanation notwithstanding, the case rises and falls on the finding of competency.

[9] The parties dispute Companioni's precise language, which itself was delivered through an interpreter. The record does not clear up the dispute. At one point in the new trial hearing, original defense counsel testified consistently with his affidavit that Companioni said he was not crazy and that "crazy men go to Hell." At another point he testified that the statement was "If you make me crazy, I go to Hell." For present purposes, the import of the two statements is the same: that a person putting on a defense based on mental health would be seen as "crazy," a result that he did not desire.

extent by Dr. Veliz and Dr. Rodgers. Moreover, the bare fact that a defendant has a mental illness does not necessarily render him incompetent to stand trial. See Indiana v. Edwards, 554 U.S. 164 (2008) (affirming lower court appointment of counsel where schizophrenic defendant was competent to stand trial, but not to defend himself). Similarly, defense counsel's use of the term "disassociated," when taken in context, was not necessarily a medical diagnosis, but could have been a description of his client's refusal to acknowledge the evidence arrayed against him, while continuing to assert his defense that he did not commit the crime. And finally, counsel testified that he understood Companioni's comment about Hell to be an emphatic opposition to his suggestion of presenting to the jury any sort of defense based on his mental illness.

In the end, we cannot decide in the petitioner's favor unless we supplant the SJC's reasoning by adopting his view of arguably conflicting evidence. But "[w]here the record evidence can be interpreted to support a different version, the case here, we must reject such a request." John, 561 F.3d at 95; see also Teti, 507 F.3d at 59 (holding that state court credibility determinations "are exactly the type of factual determinations to which we defer, at least short of any indication of serious error"). Accordingly, we conclude both that the SJC's competency finding was not unreasonable based on the facts before it and that

Companioni has failed to rebut the presumption of correctness that is part and parcel of that and other findings of fact.[10]

**B. Evidentiary Hearing in the District Court**

We review the district court's refusal to hold an evidentiary hearing for abuse of discretion. Forsyth v. Spencer, 595 F.3d 81, 85 (1st Cir. 2010). The district court provided two reasons for its decision. First, the court concluded that a hearing was barred by 28 U.S.C. § 2254(e)(2), which proscribes -- with certain exceptions -- a hearing if the petitioner has failed to develop the factual basis for a claim in state court proceedings. Alternatively, the district court concluded that Companioni failed to demonstrate that a hearing would elicit factual support for his claims. The latter rationale amply supports denial of the hearing.

---

[10] Companioni criticizes the SJC's affirmance of the Superior Court's refusal to hold an evidentiary hearing with respect to Dr. Bard's affidavit. That affidavit, however, did not address Companioni's competency to stand trial or to assist defense counsel, but only his mental condition at the time of the crime. Since Companioni was found competent to reject the defense that Dr. Bard was promoting, the denial of the hearing was not unreasonable.

Companioni also argues, for the first time on appeal, that his request for a second evidentiary hearing to consider Dr. Bard's affidavit was a denial of due process. Though he alluded to violations of due process in connection with his Strickland claim before the state court, his argument that due process violations alone could provide an independent ground for relief was not presented in his habeas petition, and no certificate of appealability was issued on this claim. Appellate review on this ground is therefore waived. Peralta v. United States, 597 F.3d 74, 83-84 (1st Cir. 2010)(citing Bui v. DiPaolo, 170 F.3d 232, 237 (1st Cir. 1999)).

Before granting an evidentiary hearing, a habeas judge "must first consider whether such hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Teti, 507 F.3d at 62 (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)). Companioni must therefore demonstrate that his allegations would entitle him to relief and that the hearing is likely to elicit the factual support for those allegations. See id.

Companioni sought a hearing in the district court to explore both his competency to stand trial and the question of his mental state at the time of the killing. The fulcrum of the case, however, is competency to stand trial -- including Companioni's competence to instruct his attorney not to pursue a defense based on his mental illness -- and the thrust of his appellate claim is that he has never had a meaningful hearing on the issue of his competence to waive a mental illness defense.

After reviewing the medical records and hearing testimony over three days, the Superior Court concluded that Companioni was competent to assist his attorney, a finding that the SJC affirmed. The record reflects that Companioni's competency to stand trial and to assist his attorney was addressed on several occasions in the Superior Court hearing. Moreover, both defense counsel and the court questioned Dr. Bard about Companioni's mental health as it related to commission of the crime and to his dealings with trial

-21-

counsel. And the hearing had been provoked by an SJC order directing the Superior Court to take evidence on Companioni's instructions to trial counsel, and it was followed by the parties' post-hearing submissions addressing his competence to give those instructions.

A "full and fair" hearing is one in which the defendant is given an opportunity to present evidence and be heard on an issue. See Neron v. Tierney, 841 F.2d 1197, 1199 (1st Cir. 1988) (citing Stone v. Powell, 428 U.S. 465, 482 (1976)). Companioni had such an opportunity. Indeed, approximately seven months elapsed between the second and third days of the hearing, thus providing Companioni significant opportunity to marshal more evidence. Where a federal evidentiary hearing would "essentially replicate" the state court record, the district court is on "shaky ground" in ordering the hearing. Pike v. Guarino, 492 F.3d 61, 70 (1st Cir. 2007). Accordingly, the district court did not abuse its discretion in denying Companioni's request for an evidentiary hearing.

## IV. CONCLUSION

Finding nothing unreasonable about the SJC's finding that Companioni was competent to stand trial and assist his attorney, or its ultimate conclusion that he did not receive ineffective assistance of counsel, we **affirm** the district court's denial of his petition for a writ of habeas corpus.

-22-